JOHN HALL *vs.* THE STATE OF DELAWARE.

The sale of liquor by an innholder on Sunday, is not within the act against the profanation of the Lord's day; he being obliged by his occupation to keep a public house of entertainment at all times.

Question reserved by the Superior Court in and for New Castle county, to be heard before all the Judges.

The case came before the Superior Court on a certiorari to the mayor of the city of Wilmington.

John Hall, the defendant, was charged before the mayor with "having done and performed worldly employment and business on the 24th day of March, 1844, the same being the Lord's day, commonly called Sunday, to wit: at the city of Wilmington aforesaid, by selling and delivering to Jacob Rice, a resident of the city of Wilmington aforesaid, a small glass of brandy; the same selling and delivering of said brandy not being a work of necessity or charity, contrary to the form of the act of the general assembly of the State of Delaware in such case made and provided."

The defendant pleaded that at the time of the supposed offence he was and is an innholder in said city of Wilmington, duly licensed by the governor, and as such duly qualified in all respects according to law, and that on the said 24th of March, 1844, he did at the request of the said Jacob Rice, sell to him one small glass of brandy as a beverage and for his refreshment, he the said Jacob Rice being a resident of said city, which is the same matter mentioned and contained in the foregoing charge and complaint, and no other, and which the said John Hall saith is not contrary to the act of the general assembly of this State as alleged in said charge. "Whereupon this 10th day of April, 1844, the said plea and the matters therein stated and confessed being considered, I am of the opinion that the said act is a worldly employment and business, the same

not being a work of necessity or charity, contrary to the form of the act of the general assembly in such case made and provided. It is therefore, considered by me the said mayor, that the said John Hall forfeit the sum of four dollars, to be applied to the use of the poor of New Castle county, according to the form of the said act of the general assembly in such case made and provided.

D. C. WILSON, Mayor."

The exception was that the charge on which the judgment of the mayor was rendered is not within the terms, true intent or meaning of the act of assembly.

The case was argued below by *Rogers* and *Wales* for plaintiff and *Gray* for the State; and was now reargued before all the judges, by *Rogers, jr.* and *Wales* for the plaintiff in the certiorari, and by *Bates, jr.* and *Gilpin,* attorney general for the State.

*Wm. H. Rogers,* for plaintiff.—This being a penal statute, must be construed strictly and not made to apply to cases out of its plain intendment. The object of the act was to enforce a public observance of the Sabbath by prohibiting what would offend the public sense of propriety. The selling of a glass of liquor by an innkeeper is not within the act. His employment is to keep a tavern, for which he is licensed. The license authorizes the keeping tavern on all days, without any other restriction than the act itself imposes. Any restriction contained in any other statute cannot apply to him unless by clear and manifest reference. His business requires the furnishing to all persons, at all times, such necessaries as they may reasonably require. Liquors are included among necessaries. (1 *vol.* 192-5) He is bound to keep his house open on Sunday as well as any other day; to receive all guests, under penalties civil and penal. A guest is such whether an inhabitant of the town or not. (1 *Cov. & Hughes Dig.* 808; 1 *Hawk. P. C.* 452; 1 *Salk. Rep.* 388; 1 *Saund. R.* 302; 1 *Smith's Lead. Cases,* 47, 62; 3 *Barn. & Ald.* 287.) The call of Rice for the liquor was a lawful demand which the innkeeper was bound to obey. The original act concerning the Sabbath, (1 *Col. Laws* 184, *an.* 1740,) provides that no person shall do any servile work, labour, or business on the Lord's day. Sec. 5, prohibits innkeepers from permitting any one to sit drinking and tippling during the hours of divine service on the Sabbath; which indirectly recognizes the right to sell liquor on the Sabbath day, if it do not interfere with public worship.

*Bates, jr.,* for the State.—The offence charged is the selling liquor

to a resident of the town who was not a boarder, nor a traveller; and, I shall contend, was not a guest. The conviction regards this as a violation of the act to prevent profanation of the Sabbath.

1. Is an innkeeper prohibited by the law from selling liquor to such a person? The act prohibits any one to do or perform any worldly employment, labour, or business whatsoever upon the Lord's day, (works of necessity and charity only excepted.) Is the selling a glass of liquor under said circumstances the performing worldly employment? The prohibitions of our act are broader than those of the English statute of 29 *Car.* 2., or the statutes of any State except Connecticut. "Worldly employment in the usual way of his business" is the restriction of the English statute, and the case cited on the other side was decided on that restriction. If the sale of liquor on the Sabbath at the usual place of business, and in the usual course of business, be not the performing worldly employment, it would be difficult to say what would be. What is the difference between such an act and the selling goods, &c.? 2. Being within the act it is for the defendant to get out of it. He must show himself excused by one of the exceptions, that it is a work of necessity or charity. It will not be contended that it is a work of charity. Is it necessary in itself, or is he under any necessity by reason of his character as innkeeper? His duty as innholder is to furnish accommodations to *guests;* none others : to keep a house of entertainment. What kind of entertainment? The necessities of a home to those who have no home; to guests. The qualifications of an innholder are that he has necessaries fit and suitable for the entertainment of *travellers,* and resides at a proper place or stage for their accommodation. That is the object of establishing taverns. It is the duty of the keeper of a tavern to entertain *such* guests, and to supply his boarders with necessaries ; but it is neither his duty nor his privilege to keep an open bar and deal out liquors to neighbours, who are not travellers nor boarders, on the Sabbath. (3 *Jac. Law Dic.* 450-1-2.) The innholder is liable for the goods of a traveller, but not of another. (*Smith Lead. Ca. Caly's.*) Granting for the argument that liquor is a necessary, the innholder is not bound to sell it to any other than a guest. He would not even be bound to sell bread to another. He is not bound to keep liquor at all. He may lock up his bar, not only on the Sabbath, but on every other day. Was the act of selling this liquor necessary in itself? The kind of necessity meant is an actual necessity, such as burying the dead and providing for the sick. The English cases establish that a baker may sell a dinner to

a particular person on Sunday, because the man must eat; but he may not sell bread, generally. (1 *Hawk.* 15; 2 *Burr. R.* 785; 5 *T. R.* 489; *Cowp.* 640; 21 *Eng. Com. Law* 261.) It is true that this act has not been hitherto enforced, but it is still a law on the statute book; and if the construction which we contend for be true, this court cannot do otherwise, (nor could it do better if it had a choice,) than to wake it up and enforce it.

*Gilpin,* Attorney General.—The question arises under the statute alone. The object of the act authorizing taverns seems to be the convenience to *travellers* exclusively. Quere. Is a tavern keeper bound to entertain any other; to take a boarder. The courts of this State have decided that any contract made on the Sabbath is void. Quere. If an individual were to go into a tavern on Sunday and run up a score for liquor, could the tavern keeper recover? And if he could not recover the price is he bound to sell? How can the license vary this?

*Rogers.*—That argument goes too far. If the license will not enable the innholder to recover for liquor, because his contract on the Sabbath is void, he could not recover for a dinner sold to a traveller; though it is admitted he is bound to sell it. A contract necessary to be made on the Sabbath would be sustained, though general contracts might not be.

*Wales,* in reply.—The question of morals in reference to what the law ought to be, can have no place in the consideration of what the law is. This act, passed in 1795, has never before been considered as applicable to innholders. For more than half a century the people of this State have, without an exception, given a construction to this act such as we contend for. The act is similar to the Pennsylvania law of 1705, which was afterwards by supplements, made to *regulate* the abuse of selling on Sunday. The first section of the act is levelled generally against all kinds of worldly business; yet the subsequent sections enumerate particular occupations. Why are these named if they were designed to be included in the general prohibitions of the first section?

The object of the act is not to compel an observance of the Sabbath by penalties; it would be as unwise as impracticable to attempt to punish the moral offence; but it is merely to prevent such public and open profanations of the Sabbath as will disturb the public quiet and sanctity of the day. Our statute is founded on the English statute 29 *Car.* 2, *ch.* 7. Yet under that act selling meat on the Sabbath

has been considered lawful. (4 *Blac. Com.* 63; 10 *C. Law Rep.* 61; 3 *B. & C.* 232; 1 *Taunt. Rep.* 184. See *State* vs. *Chandler*, 2 *Harr. Rep.* 557.)

Conceding the right and the duty of the innholder to entertain *travellers* on the Sabbath, they say that it is not necessary for others; but can there be any necessity for travelling on the Sabbath? So far as the public quiet and the sanctity of the Sabbath are invaded, it is more reprehensible to hold out inducements to the passenger who travels on the Lord's day, than to furnish a glass of lemonade or brandy and water, as a refreshment, to citizen or stranger, in a quiet way, on the Sabbath. Once commence these restrictions and where are they to stop? Why allow a man to shave on the Sabbath; or to clean his boots, or cook a warm dinner? All these may be dispensed with, and usefully so; but these are matters which have been left by universal concession, as the general business of an innholder has been considered, as out of the meaning and object of the act against a profanation of the Sabbath.

In the construction of this act we ought to look at the state of society at the time it was passed. At that day no one imagined that it prohibited a tavern keeper from selling a glass of brandy and water? And its meaning cannot have changed by a change of public sentiment. The cotemporaneous exposition of a statute is important in its construction.

For what purpose are taverns licensed? For general accommodation. I very much doubt the policy of a law that would prohibit the sale of liquor to residents, any more than to travellers and strangers. It might induce many who would be satisfied with a quiet glass of brandy at the tavern, if they could not get it there, to bring it to their homes, and drink before their families. (1 *Taunt Rep.* 184.)

This argument was had before the Chancellor, and Judges Booth, Harrington, Layton and Milligan. Before the judgment was pronounced, Judge Layton resigned his office, and Judge Hazzard succeeded him; so that the decision anounced was that of the Chief Justice and Judges Milligan and Hazzard, who reversed the decision of the mayor. The Chancellor and Judge Harrington dissented.

Chief Justice Booth delivered the opinion of a majority of the court.

BOOTH, *Chief Justice.*—The record in this case sets forth that the defendant was the keeper of an inn or public house of entertainment in the city of Wilmington, duly licensed by the governor, according to the laws of this State: that during the continuance of his license,

to wit: on the twenty-fourth day of March, A. D., 1844, being the Lord's day, commonly called Sunday, he sold and delivered, at the city of Wilmington, to Jacob Rice, a resident of said city, at his request, as a beverage and for his refreshment, one small glass of brandy. For this he was charged before the mayor of the city, with having done and performed worldly employment and business on the Lord's day, contrary to the first section of the act of assembly entitled " An act more effectually to prevent the profanation of the Lord's day, commonly called Sunday." The mayor, after hearing the case, decided, that the act charged against the defendant, not being a work of necessity, or charity, was the performance of a worldy lemployment, contrary to the said act of assembly, and fined the defendant four dollars, the penalty prescribed by the first section.

The question submitted to the court upon the argument of this case is, whether the keeper of an inn, tavern, or public house of entertainment, by the act of furnishing liquor from his bar on Sunday, is guilty of a profanation of the Lord's day, within the true intent and meaning of the said act of assembly?

The first act of the legislature for preventing the profanation of the Lord's day, was passed in the time of our Colonial Government, in the 13th year of George 2d., A. D., 1740, entitled " An act to prevent the breach of the Lord's day, commonly called Sunday." The first section prohibited any servile work, labour, or business, excepting works of necessity, charity, and mercy; and imposed a fine of ten shillings on the offender. On his refusal to pay the fine, he was to be set in the stocks for any space of time not exceeding four hours. The second section imposed simply a fine on carriers, pedlars, wagoners, &c., travelling on Sunday, and on persons selling goods. The third and fourth sections imposed a fine for fishing, fowling, horse-racing, &c., and for gaming and dancing on the Lord's day; and the offender on refusal to pay the fine, was to be set in the stocks. The fifth section imposed merely a fine of forty shillings on every innholder, ordinary, or tavern keeper, who should suffer any person or persons to sit tippling or drinking in his house on said day, during the time of divine service. The sixth section directed that all fines and forfeitures under the act should be levied by distress and sale of the offender's goods and chattels.

This act remained in force until it was repealed by the present act passed the 3d of February, A. D., 1795, entitled " An act more effectually to prevent the profanation of the Lord's day, commonly called Sunday." The provisions of the several sections of the act of

1740, except the fifth section, were substantially re-enacted by the act of 1794. The latter increases the amount of the several fines, but omits the punishment of putting the offender in the stocks; and in lieu of it, substitutes imprisonment. It contains no enactment against innholders or keepers of houses of public entertainment, in any respect whatever; but on the contrary, omits the fifth section of the act of 1740, which prohibited their permitting tippling or drinking in their houses during the time of divine service. It is evident then, in passing the act of 1740, thus made expressly to prevent the breach of the Lord's day, that keepers of inns and houses of entertainment were under the immediate notice and attention of the legislature, as well as carriers, pedlars, wagoners, and the other classes of persons specially mentioned in the act, the exercise of whose business on Sunday, would profane the day. The latter in express words are prohibited from pursuing their respective employments on Sunday, but as to the former, there is no prohibition against their exercising their calling in any respect whatever. It is to be presumed that the legislature gave to the subject that careful attention, which its importance demanded; and therefore, the fair inference is, that they considered any prohibition against the business or employment of the keeper of an inn, tavern, or house of entertainment, unnecessary; and that the only enactment deemed advisable, was that contained in the fifth section against permitting persons to tipple or drink during the hours of divine service. By no reasonable construction then, can this act be considered as including the business or calling of the innkeeper, or any part of it.

To repel the force of this argument it was insisted on by the counsel for the prosecution, that the terms of the first section prohibiting all business of a worldly nature on Sunday, include the case of the innkeeper; and that as furnishing liquor at his bar, was the milder offence; he was therefore, by that section, fined for it only ten shillings; but for the more odious and aggravated offence of permitting tippling and drinking during divine service, he was fined under the fifth section, forty shillings. This however, is begging the question. It takes for granted the very point in dispute; and involves the inconsistency of punishing the milder offence by an ignominious public exposure in the stocks, and exempting from that disgrace, the party committing the more aggravated offence. Besides, if, as is now contended, the furnishing of liquor at the bar of an inn on Sunday, be a business of such a nature, as desecrates the day, and is so destructive to public morals and the best interests of society, it is a little remarkable that

such an offence should pass unnoticed by the legislature, not only in the acts of 1740 and 1795, but in all the various acts of assembly that have been passed from time to time, from the earliest period of our colonial government to the present day, in relation to inns, taverns, and houses of entertainment;—while the pedlar, for the mere act of travelling, however unobtrusively, with his pack or wagon on Sunday, although he neither sells nor attempts to sell an article of his wares, is visited with a fine of twenty shillings by the act of 1840, and eight dollars by the act of 1795. The conclusion, therefore, to be drawn from the two acts, is,—first, That the act of 1740 did not intend to impose any penalty on innkeepers, except for the offence prohibited by the fifth section,—and secondly, That the act of 1795, by omitting that section altogether, did not intend to prohibit the exercise of any part of their business or calling on Sunday. Independently of the plain import of the two acts to be ascertained from an examination of them, a strong argument arises from the uniform construction heretofore given by the legal profession, and from the general acquiescence and tacit admission of all classes of the community on the subject ; nor has a single instance occurred from the year 1740 until the present case, a period of one hundred and four years, of any proceeding under the first section of the act of 1740, or the act of 1795, against the keeper of an inn, tavern, or house of public entertainment, for furnishing liquor at his bar on Sunday. It has been reserved for the ingenuity of the present day to discover such an offence. In connection with this part of the case, it may be remembered, that our act of assembly is similar to the English statute 29, Charles 2d.; and to the Pennsylvania act of 1705, against the profanation of the Lord's day : That in most, if not all of the States of the Union, similar legislative enactments have existed and are still in force. But with all the industry which has been put into requisition, and with all the ingenuity which has been brought to bear upon this question, no case has been produced or cited, and it is believed that none can be, from any English or American law book, of any proceeding or prosecution against an innkeeper, or tavern keeper, under any such statute or enactment for profaning the Lord's day, in merely furnishing entertainment on Sunday, either in provisions or liquor. This of itself, affords a conclusive argument, that the exercise in this respect, of the business of an innkeeper or tavern keeper, has never been considered, either in England or in the United States, as an infringement of the respective legislative enactments of either country on this subject.

But as the words of the act of assembly now in force in this State are very extensive in their meaning, it is asked what kind of business was contemplated by the section in prohibiting any worldly employment, labor or business, on the Lord's day? The answer is, no other than such as openly profanes the sanctity of the day, and violates public order and decorum. The law intended to compel the external observance of the day, by preventing the open show, bustle, and tumult of business. Hence, if a person in the privacy and retirement of his own house, engages in business of a worldly nature on Sunday, he is not amenable to the law; although he incurs the moral guilt of transgressing against the injunctions of religion. The municipal law does not undertake to punish the violation of religious duties, unless the individual by such violation, offends against those social duties which, as a member of civil society, he is bound to observe; or unless his evil example is attended with consequences injurious to the community. Therefore, a cook who prepares a dinner on Sunday, a mechanic or merchant who writes a letter of business, or a lawyer who studies his books on that day to prepare a case for argument, although each is engaged in his worldly employment, no one of them is within the prohibition of the act of assembly. For the same reason the keeper of a well regulated inn, or tavern, does not offend against the law by the mere act of furnishing his guests with food or liquor on Sunday. He no more violates good order and decorum, than a private person does, who invites his friends to his house on that day, for the same purpose.

The nature of the employment, and the duties, rights and liabilities of the keeper of an inn, tavern, or public house of entertainment, clearly indicate that the legislature never designed the first section of the act to include his case. Originally an inn, according to the definition of Webster, signified " a house for the lodging and entertainment of travellers;" and a tavern signified " a house licensed to sell liquors in small quantities, to be drank on the spot." When tavern-keepers began, besides liquors, to furnish food and lodging to travellers, the term *tavern* came to be used as a word of the same sense and signification with the term *inn*. Hence the same lexicographer says, " in some of the United States, tavern is synonymous with inn, or hotel, and denotes a house for the entertainment of travellers, as well as for the sale of liquors licensed for that purpose." Both terms it is apprehended are now synonymous in the United States; and have been so in England, so far back as the reign of Elizabeth. The principles of law therefore laid down in the books,

in relation to inns and innkeepers, are equally applicable to taverns and tavern-keepers, hotels, and public houses of entertainment.

In this State, no person can keep an inn without a license, although the license uses only the words "tavern or public house of entertainment." The mere granting of such license in itself, confers the privilege of retailing liquors. By a late act of assembly passed the 24th of February, 1845, if the party is to be prevented from retailing liquors, the license must in positive terms expressly exclude such privilege. The rights, duties and responsibilities of the innkeeper are regulated by the common law and by statute. In this State, to keep an inn without a license, is an indictable offence. When the innkeeper obtains his license, he takes upon himself a public employment, and he is bound to serve the public. The employment is for the benefit of the public, and not for his own private gain. He is obliged to keep his house open on Sundays, as well as on all other days. He cannot refuse to receive, and furnish with food and liquor (unless liquor is excluded by his license,) all persons who are willing to pay a price adequate to the sort of accommodation provided; and who come in a situation in which they are fit to be received, and demean themselves with proper decorum. If he does refuse, without a reasonable excuse, or if he furnishes unwholesome food or liquor, an action lies against him. He is bound to keep a supply of wholesome provisions and liquors, according to the style and kind of accommodation which he holds out to the public. His charges were at one time regulated by law. By the 8th section (although now repealed) of an act of assembly passed the 13th of *Geo.* 2, *vol.* 1, 195, the Court of Quarter Sessions was required annually to settle the rates of liquors; and if the innkeeper charged beyond such rates, he was subjected to a fine. It does not therefore seem reasonable to suppose, that the legislature intended to interfere with the public employment, rights and duties of the innkeeper; or that by mere implication, it can be made a criminal offence in him to exercise any part of his calling on Sunday. The act of 1795 is a penal statute and authorizes a summary conviction. It is, therefore, to be construed strictly in respect to the offences prohibited; and as it contains no express or positive terms against the business or employment of innkeepers on Sunday, but does against the business of other classes and descriptions of persons, it ought not to be construed to repeal the common law by implication, and thus to deprive innkeepers of their rights and release them from their duties to the public. A penal statute, says Best, C. J., 3 *Bing.* 580, shall not be extended by construction.

No man incurs a penalty, unless the act subjecting him to it, is clearly within the spirit and the letter of the statute imposing such penalty. If these rules are violated, the fate of the accused is decided by the arbitrary discretion of judges, and not by the express authority of the laws.

The present prosecution is under the first section of the act of 1795, which prohibits any worldly employment, labor or business, on the Lord's day. The argument is, that this section includes the case of the innkeeper. Surely then, it prohibits his worldly employment. The result is, that he is subjected to the penalty prescribed by the first section, for keeping his house open at all reasonable hours (which by the common law he is bound to do,) for the entertainment of travellers and other guests. The argument therefore proves too much. Hence it assumes, that all the section intended to prohibit, was the furnishing or retailing of liquor. But on what principle can a penal statute which prohibits a man's worldly business on Sunday, be so construed as to afford him an immunity in the exercise of one part of his calling, and to punish him for the exercise of another part? On what principle is he exempted, when he provides a dinner; and punished when he furnishes a glass of wine or brandy? To escape from this dilemma, the argument further assumes, that it forms no part of his duty to keep or furnish liquor; that to retail it from the bar, is as much a worldly employment, as to retail goods out of a store. It follows by this mode of argument, that as the license of the storekeeper cannot exempt him from the penalty of eight dollars under the second section of the act, therefore the innkeeper cannot be exempted from the penalty of four dollars under the first section.

To this it is sufficient to reply: *First,* that the business of the innkeeper as heretofore remarked, is viewed by the law as a public employment; that his only authority to engage in it, is his license; and that having taken out his license, the law requires him to keep a supply, both of provisions and liquors. He can, therefore no more dispense with furnishing the latter, than he can the former. *Secondly,* there is an obvious distinction between the case of the storekeeper and that of the innkeeper. The latter is not even mentioned in the act; but the sale of goods, wares and merchandise, is prohibited in express terms by the second section. But if the retailing of liquor at the bar is considered as a sale of goods, the proceedings in the case before the court are erroneous; because they ought to have taken under the second section, and not under the first. But a sale in its legal signification, cannot be predicated of the act of furnishing

liquor in a tavern or inn, any more than it can be predicated of the act of furnishing a dinner, or a night's lodging. When entertainment is provided, it cannot correctly be called a sale by the landlord, or a purchase by the guest. The money or price charged, is not for the sale of a dinner, or of liquor, or lodging; but for the accommodation afforded to the guest in furnishing a room, lights, fire, attendance of servants, and all other things that constitute the comforts and convenience of an inn, as well as the eating, drinking, or lodging. Hence it was decided in England, prior to the statute 6 *Geo.* 4, that an innkeeper under their statutes of bankruptcy, could not be declared a bankrupt.

The whole argument for the prosecution is founded in the fallacy of assuming that none but travellers can be guests at an inn or public house of entertainment; and therefore, although the duty of the innkeeper requires him to accommodate the traveller and entertain him with food, drink and lodging on Sunday, as well as any other day, it is no part of his duty to entertain a person who resides in the same town or city where the public house is kept. Hence, by this process of reasoning, if a traveller arrives on Sunday, the keeper of the public house or inn is bound to provide *him* with a dinner, if required, and with wine or other liquor. If the innkeeper refuses, he is liable to an action. But if a resident of the same place where the inn is kept, having called on the traveller as a friend, sits down to dinner with him, or calls for a glass of wine or brandy, the innkeeper is guilty of a profanation of the Lord's day, under the first section of the act of assembly, and is liable to a fine of four dollars. It seems to be admitted, that under some peculiar circumstances, the innkeeper may perhaps, without incurring the penalty, furnish a dinner to the resident citizen; such as his house being closed, his family absent, or his cook away. The innkeeper, therefore, must particularly inquire into all these matters. If he furnishes the dinner, and they turn out to be untrue, he must pay the fine. If they be true, he is excused for the dinner; but must pay the penalty for furnishing the glass of liquor. No penal statute was ever intended to deal in matters and inquiries of such variety. Webster, in defining an inn, as before referred to, says " in America, an inn is often a tavern where liquors are sold to travellers and others." Who are meant by " others"? Surely persons residing in the same town or city, or its vicinity; all persons who are not travellers. Justice Bayley says, in *Thompson vs. Lacy*, 3 *Barn. & Ald.* 387, that an innkeeper is bound to receive

all persons who are capable of paying a reasonable compensation for the accommodation provided.

In the *Six Carpenters' Case*, 8 *Coke's Rep.* 290, it is laid down, that the law gives authority to all persons to enter into a common inn or tavern; and therefore, if a person having entered into the inn or tavern, commits a trespass, as if he carries away any thing; he shall be a trespasser *ab initio*. Why shall he be a tresspasser *ab initio?* Because the law gives him authority or license to enter the inn, and not to the innkeeper to exclude him ; for if the entry were given by innkeeper's authority or license, the party would not be a trespasser *ab initio.* " And the reason of this difference," Lord Coke says, " is, that in the case of a general authority or license of law, the law adjudges by the subsequent act, *quo animo,* or to what intent, he entered. But when the party gives an authority or license himself to do any thing, he cannot for any subsequent cause, punish that which is done by his own authority or license; and therefore, the law gives authority to enter into a common inn or tavern." The six carpenters were not travellers; but nevertheless they were guests. They entered the inn for refreshment—for the purpose of drinking wine ; and the innkeeper was bound by the authority of the law to receive them. It was not in his option to reject them.

In *Bennet* vs. *Mellon,* 5 *Term Rep.* 173, the plaintiff's servant took his master's goods to an inn, to be left in charge of the innkeeper, as a common bailee for a few days. The inkeeper refused to take charge of them, as he had a right to do. The servant called for a glass of liquor, set down, and put the goods behind him. While drinking, the goods were stolen, and the innkeeper was held liable for the loss. On what ground was he held liable? Not on the principle that to constitute a guest, the party must be a traveller ; but because the law having given the party the authority to enter the inn, he was a guest, although he remained there but for a few minutes for the temporary refreshment which he had ordered.

In *Thompson* vs. *Lacy,* 3 *Barn. & Ald.* 283, a house of public entertainment in London, where lodging and entertainment were furnished for all persons paying for the same ; and which was merely called a tavern or coffee-house, but not frequented by stage coaches, and wagons from the country, and had no stables, was considered as an inn. A person having resided in London, in furnished lodgings, received accommodation in the tavern or coffee-house. He was considered a guest, although he was not a traveller ; and the

owner of the house was held subject to all the liabilities of an inn-keeper.

Upon the well settled principles of law, it follows, that all persons who come to an inn, or tavern, or public house of entertainment, in a situation fit to be received, who behave with propriety and decorum, and are willing to pay a price according to the accommodation provided, have a right under authority and license of law, to be received as guests. Therefore a resident of the same town, or city, where the inn is situated, conducting himself with propriety, has a right to enter into it as a guest, for the purpose of entertainment or refreshment; and the innkeeper is bound to receive him. If he behaves in a disorderly manner, the innkeeper, after first requesting him to depart, has a right to turn him out of his house.

But it has been asked, shall the innkeeper be permitted to keep an open bar on Sunday, and allow persons to assemble in the bar-room, to drink and tipple—profane the sanctity of the day, and by the evil example destroy the morals of the community, and the best interests of society? By no means. The common law affords an ample remedy. The keeper of an inn, tavern, or house of entertainment, who conducts himself in such a manner, either in the entertainment of travellers, or other persons, or in permitting such assemblages in or about his house on Sunday, as profanes the Lord's day, or violates public order and decorum, or shocks the religious sense or feelings of the neighborhood, is guilty of a nuisance at common law, and may be indicted, fined, imprisoned, and his house suppressed; according to the aggravated nature or enormity of his offence.

If he suffers any persons to continue drinking or tippling at unseasonable hours of the night, or suffers, at any time, any drunken or disorderly person to remain in his house, or permits any gambling for money, liquor, or other thing, he may be indicted and fined under the first section of an act of assembly entitled "An act concerning public houses of entertainment, and the unlawful selling of liquor or strong drink." (*Dig.* p. 519.) And for the third offence under that act, he is deprived of his license for the space of three years next ensuing his conviction.

The law has, thus provided adequate remedies for the evils that may arise from a disorderly inn or tavern, without perverting the act of assembly of 1795 to a purpose never intended by its framers. If retailing or furnishing liquor at the bar of a public house on Sunday, is an evil which ought to be suppressed, it becomes the duty of the legislature of a christian community to prohibit it. But it ought

not to be effected by an assumption on the part of the judiciary, of the power of legislation.

HARRINGTON, *Judge.*—The defendant below who, according to his plea, is "an innholder in the city of Wilmington, duly licensed by the governor," was fined by the mayor of that city "for doing worldly employment and business on the Sabbath, by selling a small glass of brandy to a resident of the said city, the same not being a work of necessity or charity." The defendant's license authorizes him in the usual form to keep a tavern, or public house of entertainment, which embraces both a tavern and an inn. The legal definition of an inn is a house where the traveller is furnished with every thing he has occasion for while on his way." Our act of assembly requires that the keeper of a public house shall have "necessaries fit and suitable for the entertainment of travellers," and that his house shall be "situate in a proper and convenient place and stage for the entertainment of travellers." Both by the common law, then, and the statutes of Delaware, public houses are licensed for the convenience of travellers; to afford a temporary home and needful refreshment to those who being from home, are under the necessity of resorting to such a place of entertainment. Hence it is said in Calye's case, (8 *Co.* 32,) "that common inns are instituted for passengers and wayfaring men; for the latin word for inn is diversorium, because he who lodges there is quasi divertens se a via; and so diversoriolum. And therefore, if a neighbor who is no traveller, as a friend, at the request of the innholder, lodges there, and his goods be stolen, &c., he shall not have his action; for the writ is ad hospitandos homines, &c., transeuntes in eisdem hospitantes." "So if an host invite one to supper; and, the night being far spent, invite him to stay all night, and he is after robbed, yet shall not the host be charged; *for his guest was no traveller.*" (5 *Bac. Ab.* 234.)

A tavern is a house licensed to sell liquors in small quantities, to be drank on the spot. It has no reference to any other kind of accommodation, nor any reference to the character of the purchasers of the liquor, whether as travellers or residents. The defendant, as is usual in this State, combines the two occupations, and keeps an inn for the entertainment of travellers, and a tavern for the sale of liquor; both of which he is duly licensed to do; and the question presented to us on this record is, whether in the exercise of this occupation the sale of a glass of brandy on the Sabbath, to a person who is not a traveller but a resident of the same city, is a violation of the act

against the profanation of the Lord's day.. That act provides, that if any person within this State shall do or perform any worldly employment, labor or business whatsoever on the Lord's day, commonly called Sunday, (works of necessity and charity only excepted) and be duly convicted thereof, he shall forfeit for every such offence, the sum of four dollars.

If the defendant be exempt from the prohibition of this law, it must be either because the nature of his occupation necessarily conflicts with it, and the law is therefore, as to him, impliedly repealed by another law under which his license is granted; or he must show himself to be within the exception of the statute, by establishing that the act for which he is prosecuted is a work of necessity or of charity. And this has been the defence. It is not pretended that the act of selling the liquor is not the doing worldly employment or business, but the defendant in his plea and in the argument, rests his defence upon his license; namely, that as a licensed innholder and tavern keeper, he is not only authorized, but required to keep his house open for the public, and receive and entertain all guests, travellers and others, on the Sabbath as on any other day, and to sell liquor without any other restrictions than such as are imposed by the law under which he is licensed.

The different terms used to designate the defendant's occupation have caused some embarrassment to the investigation of the duties and privileges growing out of his business. He styles himself in his plea an innholder; which is, perhaps, the best general designation. His license merely authorizes him to keep a tavern or public house of entertainment; which includes under our statute a tavern, inn, ale-house, ordinary and victualling-house. Whatever duties or rights belong to either of these are all combined in his character and occupation as an innholder; which is the highest designation and there-fore the best. These several occupations were very distinct by the common law; but the usual distinction in later times is between an inn and an ale-house. Thus the books say, " every inn is not an ale-house, nor every ale-house an inn," but if an inn uses common selling of ale, it is then also an ale-house; and if any ale-house lodges and entertains travellers it is also an inn. A tavern keeper, by the common law was not bound to entertain travellers and provide them with any thing they might have occasion for. His occupation was to sell liquor by the small measure as the retail merchant's is to sell it by the quart or greater measure, and he is not bound, neither is he authorized, to sell his liquor in any other manner or at

any other time than the law allows others. The law which prohibits merchants from selling the quart equally prohibits *nim* from selling the gill on the Sabbath day, unless in either case a special necessity is shown. But the innkeeper is bound to entertain travellers at all times and to furnish them with every thing they may have occasion for while on their way; and if this be his *obligation*, it then becomes his *privilege* to furnish a *guest* with liquor, if required, on the Sabbath. I enter into no question whether liquor be a necessary; if called for and used in the course of the entertainment of a guest, it is in the line of that occupation which the law allows to be carried on on the Sabbath day, because it is necessary that it should be done on that day as well as any other. But this does not make it necessary for the tavern keeper alone, or the innholder and taverner combined, to keep an open bar and *sell liquor* as a business to any one who may call for it on the Sabbath, and who has no other connection with the inn as a guest than being a casual dropper-in for the mere purpose of buying a glass of liquor. The occupation of innkeepers is not to sell liquor; their duty extends chiefly to the entertaining of travellers, finding them victuals and lodgings, and securing the goods and effects of their guests. (5 *Bac. Ab.* 230.) An innkeeper cannot (as a trader,) be a bankrupt; for though he buys provisions to be spent in his house, yet he does not properly sell them, but utter them at reasonable rates considering the attendance of servants, furniture of house, &c. The contracts with innkeepers are not for any commodities *in specie*, but they are contracts for house room, trouble, attendance, lodging and necessaries; (5 *Bac. Ab.* 229,) all of which shows that the selling of liquor is not within his duty, and therefore not his privilege unless it be connected with the entertainment of a traveller as his guest. A tavern keeper may doubtless sell a glass of liquor without furnishing other entertainment, and he may sell it to a neighbor as well as to a stranger; his license authorizes him to *sell liquor* by the small measure, as well as to keep a house of public entertainment; but the question here is of his right to sell a glass of liquor to a neighbor *on the Sabbath*, though the law prohibits any person from doing any worldly employment, labour, or business on the Lord's day. The defence is not that he has a right to vend liquor, but that being bound to entertain guests he may lawfully furnish the liquor as a part of the entertainment.

The present case turns then on the question whether J. Rice was a guest at the inn of the defendant, and whether this liquor was

furnished him as such. Was he a traveller who had been received at this inn as a guest demanding such entertainment as the defendant was bound to furnish. If he was, the defendant is excused for this act of worldly employment done on the Sabbath, under the plea of necessity, he being compelled to do it. For an innkeeper is bound to receive a traveller as a guest at his house and to entertain him ; and it is no defence that the guest was travelling on the Sabbath. (5 *Bac. Ab.* 232.) If he refuse to receive him he is liable to an action on the case for damages, and may also be indicted and fined. (*Iden.* 232.)

The argument that Rice was the guest of the defendant drawn from the fact that he sold him a glass of liquor is a complete *petitio principii.* The very question before the court is whether the defendant had a right to sell this glass of liquor ; and surely it cannot be an argument that he had the right to sell it because he did sell it. It is conceded that the defendant as an innholder could serve liquor to his guests in the course of their entertainment, but to argue that Rice was a guest because the defendant sold him liquor, and that the defendant sold him liquor lawfully because he was a guest is reasoning in a circle. The act of selling the liquor is unlawful in itself unless it was served out in the way of entertaining a guest ; the relation therefore of landlord and guest must exist before the act, and must appear otherwise than by the act, which that relation is to excuse. But looking at the record there is no pretence there that Rice was the defendant's guest otherwise than as the purchaser of this liquor. The prosecution is for " selling and delivering " the brandy ; and the plea is that the defendant being an innholder in the city Wilmington, duly licensed, " did at the request of the said Jacob Rice, sell to him one small glass of brandy as a beverage and for his refreshment, he the said Jacob Rice being a resident of the said city." Was the defendant authorized to make that sale on Sunday? Is there any evidence that he had before the sale received Mr. Rice as a guest ; and was he bound to receive such a person as a guest in his house ?

I have already shown that neither the objects for which inns are licensed nor the necessities of the public require the entertainment of others than travellers ; and the cases so expressly confine the liabilities of innkeepers to the case of travellers that even a permanent boarder is not regarded as a guest but as a quasi lessee. (*Bac. Ab.* 234.) The cases in *Roll.* and *Brownl.* referred to in *Bacon,* are placed expressly on the ground that the guest was a neighbour and no traveller. And it was decided in *Rex.* vs. *Luellin,* 12 *Mod.* 445, that an indictment

against an innkeeper for not receiving a sick person, must state that he was a traveller. That is conclusive of this case if it be the law; for if an indictment against an innkeeper for not receiving a guest must aver that he was a traveller, the plea of an innkeeper excusing himself for doing worldly business on the Sabbath by serving a guest, must aver that he was a traveller.

The case of *Grinnell* vs. *Cook*, a late New York decision, reported 3 *Hill* 485, is full on this point. It was an action by Grinnell, an innkeeper, against Cook, a deputy sheriff, for selling the horses of one Wm. Tyler, in plaintiff's stables without paying plaintiff's bill for their food. The innkeeper and Tyler were both residents of the same town, and the horses were put in plaintiff's stables by Tyler. He claimed compensation for feeding the horses on the ground that they were put there by Tyler, who for this purpose was his guest. The court said, the innkeeper is bound to receive and entertain travellers and is answerable for the goods of his guests. On this account he has a lien on the goods. The lien and the liability must stand together. "Tyler, who owned the property was not a traveller, nor was he in any sense a guest in the plaintiff's house, and I think it quite clear that the plaintiff was not bound to receive and take care of the horses." Again the judge says,—" now in this case, Tyler, who owned the horses, never was the plaintiff's guest; nor was he a traveller or transient person. He was the plaintiff's neighbor." Why was he not a guest? The only two reasons assigned or which could exist, were that he was not personally, and had not been, an inmate of the tavern, but took his horses there: and 2d, that he was no traveller, but a resident of the same town. The first reason is an unsound one, and the case rests and is sustained, entirely on the latter reason, namely, that the innkeeper was not bound to take the horses from a neighbor, and therefore, he was not a guest as he would have been if he had been a traveller. The judge says, the relation of guest to the innkeeper must exist to give him the lien, and he admits that to make him a guest he need not be actually *infra hospitium* at the time the lien accrued. In *Yorke* vs. *Grenaugh*, (2 *Ld. Ray.* 866,) it was decided that, " if a man set his horse at an inn, though he lodge in another place, that makes him a guest." And this, though not unquestioned, has ever since been considered as well settled law, as the court said in *Mason* vs. *Thompson*, (9 *Pick. R.* 280,) when it was decided that to constitute a guest it is not essential that he should be a lodger or have any refreshment at the inn. If a person commits his horse to an innkeeper to be fed he is

a guest although he do not himself lodge or receive any refreshment at the inn. The same law was recognized in *Simpson* vs. *Hand*, (6 *Whart.* 311, 322,) and in the note to *Smith's Leading Cases* it is shown that *Grinnell* vs. *Cook* rests solely upon the fact that the person owning the horses was not a traveller but a resident of the town. Had he been a traveller or transient person the innkeeper would have been bound to receive his horses; this would have made him a guest, and the plaintiff's lien would have attached. It is an authority on the very point that rules this case. The defendant as an innholder was not bound to furnish the liquor to Mr. Rice, who was no traveller or transient person and not his guest; he cannot therefore, excuse himself for violating the Sabbath by his plea of necessity.

My opinion therefore, is, that an innkeeper cannot keep open bar and sell liquor to all persons on the Sabbath. He is bound to receive a traveller on that day as on any other day, and to furnish him with refreshments, liquor included; and in thus serving a guest he is not liable to the penalty of the act against the profanation of the Lord's day. It is, as to him, a work of necessity. But he is not bound to sell liquor on the Sabbath day, and not being bound, he is not at liberty to sell it to a person who is not a traveller but a resident of the same place. This is the plain, natural construction of the act to prevent the profanation of the Lord's day, in connection with the acts for regulating innholders, tavern keepers, &c., and it harmonizes them all, and gives full effect to all. It allows the tavern keeper to perform worldly business on that day just so far as the nature of his business requires for public necessity under the exception for works of necessity; and in no other form is he excepted from the first mentioned act. It is a general prohibition of every person from doing worldly business on the Sabbath, and neither in it nor in the acts regulating taverns is there any permission to an innholder to carry on his business on the Sabbath, more than any other; the merchant for instance; either of them can excuse himself for a violation of this general law by a plea that his work was a work of necessity or charity. The merchant may sell clothes to bury the dead, or liquor for the sick on Sunday, and the tavern keeper may entertain guests on this day as on any other day, for this is necessary; but they must be guests, such guests as have a right to be in his house as guests on the Sabbath, and such as he is bound to receive and entertain. A neighbor who has a home in the same town is under no necessity to become his guest, nor is he necessarily entertaining him as a guest by selling him a glass of liquor. It may be that such a person might

become the guest of a tavern keeper, but it ought to be on a special admission as a guest, showing the necessity, as that his own house was closed, or that he was passing from one place to another, so as to make his entertainment at the tavern as a guest convenient and desirable. As in the case cited from 3 *Barn. & Ald.* 283, which is the principal case relied on, and I may say *the only case* cited where the guest was other than a passenger away from his own home, and that was the case of a person who had lived theretofore in furnished lodgings in the great city of London, but desiring to change that mode of living, applied at the defendant's coffee-house to be taken in as a guest. He was seeking a home, having no other. The point in the case was whether the coffee-house could be considered an inn; the plaintiff could well be a guest without violating the principle I have assumed. I say this is the only case because the Six Carpenter's case was one of persons calling at a tavern, not on a Sunday, to buy liquor. But Mr. Rice in this case sought in no sense to become the guest of the defendant. He called to buy a glass of grog there, as any customer would on another day call on the retail merchant to buy a quart. Why should the license of the tavern keeper allow him to sell the gill any more than the merchant to sell the quart on Sunday? Upon what principle can it be said that the tavern keeper may sell liquor when the merchant may not, unless it be in the entertainment of a guest? The license authorizes each to sell liquor, generally, as a business; the law prohibits both alike from doing this or any other business on the Sabbath. Both then are alike prohibited; and the tavern keeper only excuses himself by showing that the person to whom he sold was his guest, and such a guest as he was bound to receive and entertain.

These laws must receive a connected construction giving them both effect if we can. We have no authority to repeal either, neither does it repeal either to say it is an old law and has not before been enforced. If the public has borne with the abuse of a law for a long time without bringing it before the judicial tribunals for a construction, it is no reason why the court shall construe it differently from its plain meaning because the public have hitherto acquiesced in a different construction, which the innkeepers have placed upon it for their own profit. It is very easy to account for this construction. The innholder is authorized to entertain guests on Sunday and supply them with liquor, and very slight acts will make transient persons and travellers guests; a slight extension of this privilege which introduces neighbors and loungers, opens the bar for a regular

sale of liquor on Sunday; degrades the inn, which is established for the comfort of travellers, into a tippling house; destructive of their comfort and annoying to the public ; and is an abuse of the privileges which belong to the legal character of an innholder. The construction which I place upon the law, and which I submit, lies plainly on its face, leaves to the innholder all the privileges that belong to him in the entertainment of guests ; protects him against the inroads of idlers on the Sabbath ; prevents the gradual declension of inns into tippling houses, which is far better than punishing them after the indulgence of your law has made them such ; protects the public against this nuisance, while it affords the travelling public all conveniences for which inns were established ; and enforces the law against the profanation of the Lord's day by the open and public sale of liquor at a tavern bar, without necessity and without excuse.

It may be said that this is imposing on an innkeeper the task of distinguishing between travellers and residents, which, in a city, it may be difficult to do ; but it must be remembered that this is an excuse which he offers for violating a general law, and he ought to make it out. He knows, or he ought to know, who are his guests. No one can make himself a guest without his permission; and he may satisfy himself of the propriety of accepting as a guest any one who presents himself on Sunday, especially when he comes merely for the purpose of buying liquor, which the innkeeper has no right to sell to others than guests. And in a doubtful case there would be but little danger of a conviction. But in the present case there is no matter of doubt presented; the record shows and was designed to show, for the case was made for the express purpose of raising the question, that Jacob Rice was a resident of Wilmington, and that he called at the defendant's inn for the purpose of buying a glass of liquor.

The Chancellor said the different views of the question had been so fully presented, that he thought it unnecessary to add any thing further than that he fully concurred in the conclusion, and assented to the views presented by Judge Harrington.

Judgment of reversal.